FILED IN CHAMBERS
U.S.D.C. - Atlanta

OCT 13 2006

JAMES N. HATTEN, Clerk
By:
                                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAUL BARRERA CASIMIRO

    Petitioner

v.

FAUSTA PINEDA CHAVEZ

    Respondent

CIVIL ACTION NO.
1:06-CV-1889-ODE

## ORDER

This civil action brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610 (2000), is before the Court for findings of fact and conclusions of law as to Petitioner Casimiro's petition for return of his minor child to Mexico following a bench trial on October 10 and 13, 2006. Petitioner seeks the immediate return to Mexico of his fifteen year old child Rubi Daniela Chavez Casimiro ("Rubi," "the Child") for a custody determination necessitated by the Child's mother's wrongful removal and relocation of the Child to the United States.

Having heard the evidence and arguments presented by the parties and having reviewed the guardian ad litem's report based on interviews with Petitioner, Respondent and Rubi, the Court makes the following findings of fact and conclusions of law:

## I. Findings of Fact

Petitioner Saul Barrero Casimiro and Respondent Fausta Pineda Chavez are husband and wife, though now estranged. They were

married in Mexico on August 18, 1979. They have four daughters. The youngest daughter is Rubi, age fifteen (7/23/91), whose status is the subject of the instant petition. Rubi was born in Mexico. Petitioner and Respondent lived together with their daughters in Cuernavaca, Morelos, Mexico until July of 2005.

Rubi enjoyed a good relationship with both her parents when they lived together in Mexico and both parents were involved in Rubi's life. Rubi played basketball with her father on Sundays and had lunch with her father every day. Petitioner's income was and is sufficient to support the family. Additionally, Petitioner has sent one daughter to college in Mexico and is financially capable of sending Rubi to college as well.

On July 11, 2005, Respondent took Rubi and her older sister Tania Xitalali Chavez Casimiro[1] ("Tania") with her to the United States for a vacation. Respondent traveled to the United States with Petitioner's consent. Respondent was supposed to return to Mexico with the children. On August 18, 2005, Respondent called Petitioner and informed him that she would not be returning to Mexico and that she intended to keep the children in the United States permanently.

Respondent and Rubi have extended family in Georgia. Respondent's mother and several of her brothers and sisters, their spouses, and their children live here. However, Rubi also has family in Mexico. Petitioner and Respondent's two older daughters,

---

[1]Tania is now sixteen years old. Because the Hague Convention only reaches children under the age of sixteen, Tania is no longer covered by the Convention and therefore Petitioner cannot petition to have her returned to Mexico with Rubi.

Alejandra and Blanca, live in Mexico.   Blanca lives with Petitioner.   Blanca attended college in Mexico and is now a history teacher.  Alejandra is married and has two children.  Rubi is close to Alejandra and continues to speak with her regularly by telephone.

Respondent, Rubi and Tania lived with Respondent's relatives in Duluth when they first moved to Atlanta.   They moved into an apartment of their own at the beginning of August 2006. Respondent has earned some money by answering telephones for her sister's business and by performing acupuncture therapy, which is something she also used to do in Mexico.   Respondent's family helps her pay the rent on the apartment she shares with her daughters.

Respondent's immigration status remains uncertain.   Rubi's immigration status is derivative of her mother's status until she turns twenty-one or obtains some form of independent immigration status, such as a student visa. For the past fifteen months Respondent has lived in the United States under a non-immigrant visa, a tourist visa, which expired in August 2006 and was extended to October 10, 2006.  Respondent applied for an extension of the non-immigrant visa on September 25, 2006, but has not yet learned whether that extension will be granted.   Respondent has applied for an immigrant visa, however this application could take many years to process and will not allow Respondent to remain in the United States while the application is pending.

Rubi and her sister attended Duluth High School in Duluth, Georgia, for the 2005-2006 school year and are to date attending there for the 2006-2007 school year.  Although Rubi still speaks

3

Spanish as her primary language, she is quickly learning English. Most of Rubi's classes are conducted in English, but she is also enrolled in English as a Second Language ("ESOL") classes. Rubi's favorite class is math. Her grades are high; she makes mostly A's and B's. Rubi has made friends at school and participates in some extracurricular activities, including one group called Juntos that encourages immigrant children like Rubi to consider pursuing their education beyond high school. Rubi would like to attend college and hopes to become an ESOL teacher one day.

Although Rubi is thriving in high school in the United States, she also thrived in school in Mexico. Her grades were better there. She also participated in numerous extracurricular activities in Mexico, including flute and piano lessons, ballet lessons, and swimming.

Petitioner began trying to have Rubi returned to Mexico soon after Respondent notified him she intended for Rubi to remain in the United States with her. In September 2005, Petitioner hired a lawyer in Mexico to file a penal denouncement against Respondent for taking the children without authorization. Petitioner later contacted a Mexican state family organization that connected him to the United States National Center for Missing and Exploited Children, which ultimately led to the filing of this action on August 11, 2006, a little over a year after Respondent and Rubi left Mexico.

Petitioner has had only limited contact with Rubi since Respondent informed him she and Rubi would remain in the United States. Petitioner and Rubi communicated via email throughout August, September and October of 2005. Rubi's emails indicated to

Petitioner that Rubi wanted to return to Mexico. The emails also implied that Respondent intended to stay in the United States with Rubi and did not want Rubi communicating with Petitioner. Although Rubi initially emailed Petitioner from her own email account, she continued to email Petitioner through a friend's email account even after Respondent terminated her access to her email account sometime in late September-early October of 2005.

The last communication Petitioner received from Rubi before filing the instant petition was a handwritten letter dated June 10, 2006. In that letter, Rubi told her father that they had been having problems at home in Duluth and that she hoped someday the family would be together again. She also told Petitioner not to email her anymore because Respondent was reading her emails. Rubi closed the letter by assuring Petitioner she would see him soon.

The Court held a Show Cause hearing on August 31, 2006, at which Respondent and counsel for Petitioner appeared. At that hearing, the Court ordered Respondent not to remove Rubi from the Northern District of Georgia. Subsequent to that hearing, the Court appointed counsel for Respondent and a guardian ad litem for Rubi. The guardian ad litem, Leeza Cherniak, prepared and filed a report which the Court has reviewed and considered.

The Court held an evidentiary hearing on October 10, 2006, at which Petitioner, Respondent and Rubi all appeared. At the hearing, Petitioner and Respondent agreed that Petitioner had satisfied all the elements of a prima facie claim under the Hague Convention. Petitioner and Respondent also agreed that the only issue for the Court to decide was whether Respondent can prove the exception under Article 13 of the Hague Convention that allows the

court to take a child's preferences into account when deciding whether to return the child to her State of habitual residence. The Court took testimony from Rubi in the presence of counsel for both sides and the guardian ad litem.  The hearing was then continued until October 13, 2006, to allow the parties time to brief the Court on the child's preference exception as well as Respondent's current immigration status in the United States. Because Petitioner has had only limited communication with Rubi since her removal from Mexico, the Court also directed Respondent to allow Petitioner to spend at least two hours with Rubi on each of the three evenings between October 10 and October 13, 2006. The parties agreed that Rubi's sister Tania would be included in these meetings.  At the hearing October 13 hearing the Court took testimony from Respondent, from immigration attorney, and further testimony from Rubi.

## II.  Conclusions of Law

The dual goals of the Hague Convention are to "secure the prompt return of children wrongfully removed to or retained in any Contracting State;" and to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  The Hague Convention on the Civil Aspects of International Child Abduction, art. 1, Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501. The Hague Convention "is intended as a rapid remedy for the left-behind parent to return to the status quo before the wrongful removal or retention." Ruiz v. Tenorio, 392 F.3d 1247, 1250 (11th Cir. 2004) (quoting Shealy v. Shealy, 295 F.3d 1117, 1121 (10th Cir. 2002)).

6

Under ICARA, this Court has jurisdiction to decide the merits of Petitioner's wrongful removal claim, but not to decide any underlying custody dispute. See Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998); see also Friedrich v. Friedrich, 78 F.3d 1060, 1063 (6th Cir. 1996) (hereinafter "Friedrich II"); Feder v. Evans-Feder, 63 F.3d 217, 221 & n. 5 (3d Cir. 1995); Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995).

It is the petitioner's burden to show by a preponderance of the evidence that the child's removal was "wrongful" under the Hague Convention.  Article 3 of the Hague Convention states the standard for wrongful removal of a child. The removal or retention of a child is wrongful if:

  (a)  it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
  (b)  at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3, 19 I.L.M. at 1501. Petitioner's prima facie case for wrongful removal under Article 3 therefore consists of three parts: (1) the State where he resides is the State where the Child was "habitually resident" prior to her removal; (2) Respondent's removal of the Child from that State was in breach of Petitioner's custody rights under the laws of the State of habitual residence; and that (3) Petitioner actually exercised his custody rights at the time of the Child's removal. See 42 U.S.C. § 11603(e)(1)(A); see also Lops, 140 F.3d at 936.  The parties have stipulated that Petitioner has met his burden.

Once a petitioner meets his burden by proving wrongful removal of the child, the child should be "promptly returned" to the State of her habitual residence unless the person resisting removal can establish the applicability of an affirmative defense or exception as set forth in Articles 12, 13 and 20 of the Hague Convention.  42 U.S.C. § 11601(a)(4).  Articles 12, 13, and 20 establish four affirmative defenses from which the person resisting removal can choose. The child should not be returned to her State of habitual residence if:

(1)  there is a "grave risk" that the child's return will "expose [her] to physical or psychological harm or otherwise place [her] in an intolerable situation;"

(2)  the return of the child to her State of habitual residence would not be permitted by the "fundamental principles" of that State, "relating to the protection of human rights and fundamental freedoms;"

(3)  the removal action was not commenced within one year of the wrongful removal of the child, and the child is "well-settled" in the new State;

(4)  the petitioning parent was not actually exercising his or her custody rights at the time of removal or consented to the removal.

Miller v. Miller, 240 F.3d 392, 398-99 (4th Cir. 2001). The person resisting removal of the child must prove the first two affirmative defenses listed above by clear and convincing evidence, the second two by a preponderance of the evidence. Id. at 398-99.  The parties have stipulated that Respondent cannot make the showing required by any of the foregoing affirmative defenses.

In addition to these four affirmative defenses, Article 13 provides an exception to the general rule that a court must return the child if the petitioning parent proves his prima facie case

under the Hague Convention.  Under Article 13, if "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views," the court may refuse to order the return of the child to her State of habitual residence. Hague Convention, art. 13, 19 I.L.M. at 1502.

Despite the existence of these defenses and exceptions, the Hague Convention "establishes a strong presumption favoring return of a wrongfully removed child, and exceptions to the general rule of expedient return...are to be construed narrowly." McManus v. McManus, 354 F. Supp. 2d 62, 68 (D. Mass. 2005).  Additionally, the Court retains discretion to order return of the child to her state of habitual residence even after the removing parent successfully proves one of these defenses or exceptions, as long as the child's return is "in furtherance of the aims of the Hague Convention."  Giampaolo v. Erneta, 390 F. Supp. 2d 1269, 1285 (N.D. Ga. 2004); see also Feder, 63 F.3d at 226.

Respondent argues that Rubi objects to being returned to Mexico and, at age fifteen, has reached the degree of maturity at which it is appropriate for the Court to take account of her views.  Rubi's early emails and her June 10, 2006 letter to Petitioner all express Rubi's desire to return to Mexico. However, Rubi changed her mind in August 2006 after learning Petitioner had filed the instant petition.  In an affidavit filed with the court on August 30, 2006, Rubi stated that she is living with her mother in Georgia of her own free will, and that she wishes to remain with her mother. Although she expressed a desire

9

to return to Mexico at an earlier time, she no longer wishes to return.

Rubi testified in chambers with Counsel for Petitioner and Respondent and her guardian ad litem present. Rubi told the court that although at one time she wanted to return to Mexico, she now wants to stay in the United States. She explained that she initially thought that she, her mother and her sister could all return to Mexico together to live with Respondent. She realizes now that is not likely to happen. She indicated that she believes her career and educational opportunities are greater in the United States than they would be in Mexico. She misses her family and her friends in Mexico but she has become accustomed to life in the United States and does not wish to move again. She denies being unduly influenced by her mother in her decision to remain in the United States.

Rubi is a mature and intelligent fifteen year old, a fact which weighs in favor of allowing her to remain in the United States with Respondent. It is clear to the Court that Rubi has given her decision to remain in the United States a great deal of thought. Rubi's close relationships with her mother's family in Georgia as well as with her sister Tania also weigh in favor of allowing her to remain with Respondent in the United States. See Giampaolo, 390 F. Supp.2d at 1280, 1285 (considering the child's relationship with family members in the United States as one of several factors in favor of allowing the child to remain in the United States, although ultimately deciding to return the child to Argentina against her expressed preference); McManus, 354 F. Supp. 2d at 72 (relying in part on the close relationship

of the two younger siblings to the two older siblings in deciding to allow younger children to remain in the United States with their father, despite their being too young to form and express a thoughtful opinion about where they should live).

However, other more persuasive factors weigh in favor of the Court's exercising its discretion to return Rubi to Mexico despite her expressed preference to remain in the United States.  First, and most importantly, the Court finds Rubi's uncertain immigration status very troubling.   Other courts have cited illegal or uncertain immigration status among their reasons for refusing to recognize an exception under the Hague Convention or for sending a child back to her state of habitual residence despite her preference to remain in the United States.  See In re Cabrera, 323 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004) (reasoning that it would be better to send a child whose immigration status is uncertain back to her State of habitual residence sooner rather than later, because the effect on the child would be much more negative if she were allowed to remain in the United States until she became "firmly settled" and then were deported); In re Koc, 181 F. Supp. 2d 136, 154 (E.D. N.Y. 2001) (noting that "[t]he fact that the Immigration Service may not be looking to deport them at this time does not, in any way, guarantee that that position will not change in the future or that [the child] and her mother will ultimately become legal permanent residents of this country" when concluding that the child was not "well-settled" in the United States).  The illegal immigration status of the parent with whom the child lives in the United States might also negatively affect the ability of the non-custodial parent to visit the child. See id.

11

Respondent's status remains uncertain and depends upon a number of contingencies. Although she has sought further extensions of her most recent non-immigrant visitor's visa, this type of visa does not permit her to legally work in the United States. There is no assurance that Respondent will obtain legal resident status in the near future. Rubi's immigration status is derivative of her mother's and is therefore also uncertain. Should any of the contingencies on which Dependent's immigration status depends be decided against her, Respondent and Rubi would be at risk for detention and deportation by U.S. Citizenship and Immigration Services - a result that would disrupt Rubi's studies, her social life, and the life she has built with her mother's family in the United States. The longer Rubi remains in the United States, the further removed she becomes from her friends and family in Mexico, and the harder it will be for her to readjust to life in Mexico following deportation from the United States. Furthermore, should Rubi and her mother's status become illegal, Petitioner's ability to visit Rubi might be affected.

Second, the Court finds evidence of influence by Respondent and her family over Rubi and Rubi's decision to remain in the United States. This Court has previously recognized a child's tendency to be unduly influenced by the preferences of the parent with whom she lives. See Giampaolo, 390 F. Supp. 2d at 1285 (stating that the child "has been influenced by [abductor parent's] preference for her to remain here" and noting that "[t]he Child appears to have internalized [abductor parent's] views about the possibility of being returned to Argentina"). Other courts have found undue influence where the child's reasons

for preferring the stay in the United States appear to have been supplied by the parent with whom he or she is living.  See Hazbun Escaf v. Rodriquez, 200 F. Supp. 2d 603, 610 (E.D. Va. 2002) (finding that a thirteen year old boy's observation that he has better job and educational opportunities in the United States "appear[ed] clearly to be the product of suggestion by others"); McManus, 354 F. Supp. 2d at 71 (recognizing the possibility of coaching by a parent, but finding no indications two teenagers' testimony "had been coached or otherwise unduly influenced by their [abductor parent]").

Whether or not Rubi has been "unduly" influenced by her mother and her mother's family in her decision to remain in the United States, she has certainly been influenced by them.  Rubi repeatedly expressed to her father in emails and a letter sent over the course of nearly a year that she wished to return to Mexico.  Only after her father filed this petition did Rubi change her mind, and it is apparent to the Court that the reaction of Rubi's mother and her mother's family (with whom Rubi has frequent contact) to the petition played a role in Rubi's newly-expressed preference to remain in the United States.

Finally, the Court finds it troubling that Respondent has made it difficult for Rubi to communicate regularly with Petitioner during the fifteen months she has lived in the United States.  Rubi's emails to her father have been sporadic, apparently because Respondent does not like Rubi communicating with Petitioner.  Rubi told Petitioner in her June 2006 letter that Respondent reads her emails, and Rubi asked Petitioner not to email her anymore for that reason.  Petitioner had not seen Rubi

in person for fifteen months until he traveled to the United States for this hearing, and, once he was in Atlanta, Respondent did not allow Petitioner to visit with Rubi alone until this Court directed her to do so.

Despite Rubi's age and maturity and her preference to remain in the United States, the Court finds that consideration of all factors, especially Rubi's lack of settled legal status in the United States, weighs against Respondent's position.

For the foregoing reasons, Petitioner's Hague Convention petition [#1] is GRANTED.   The Court orders Respondent to relinquish physical custody of the Child to Petitioner immediately.   Rubi shall accompany Petitioner back to Mexico no earlier than and no later then Tuesday, October 17, 2006.

SO ORDERED, this __13__ day of October, 2006.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE